**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JASON STEELE BOLLINGER | ) | CASE NO. 1:25-cv-02717 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY | ) | **REPORT AND RECOMMENDATION** |
| Defendant, | ) | |

**I. Introduction**

Jason Bollinger ("Bollinger" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

**II. Procedural History**

On September 20, 2023, Bollinger filed applications for DIB and SSI, alleging a disability onset date of November 13, 2022. (ECF No. 7, PageID #: 73). The applications were denied initially and upon reconsideration, and Bollinger requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On February 14, 2025, an ALJ held a hearing, during which Claimant, represented by counsel, as well as an impartial vocational expert and an impartial medical expert testified. (*Id.* at PageID #: 92-117). On March 12, 2025, the ALJ issued a written decision finding Bollinger was not disabled. (*Id.* at PageID #: 73–86). The ALJ's decision became final on October 20, 2025, when the Appeals Council declined further review. (*Id.* at PageID #: 57-59).

On December 15, 2025, Bollinger filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 9, 12, 13). Bollinger asserts the following assignments of error:

(1) The Administrative Law Judge (ALJ) improperly evaluated the severity of Plaintiff's mental impairment at step two, including considering the paragraph B criteria. Then the ALJ failed to account for these mental impairments, whether they were severe, or non-severe impairments in the residual functional capacity (RFC) at step four.

(2) The ALJ erred evaluating the persuasiveness of medical opinion evidence by not properly articulating the supportability and constancy factors for the opinion of plaintiff's counselor.

(ECF No. 9 at 1).

## III. Background

### A. Relevant Disability Allegations

The ALJ summarized Bollinger's disability allegations:

> Through his application and accompanying paperwork, testimony, and representative correspondence, the claimant alleges disability due to a combination of physical and mental impairments including scoliosis, bulging disc, right-sided weakness, lightheadedness, low vitamin D level, anxiety, depression, and possible obsessive compulsive disorder (OCD) (4E/2; 15E/1; Hearing Record). Generally, he indicated that these conditions make it difficult for him to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, follow instructions, and get along with others (5E/6). For example, he reported the longest he can walk before needing to stop and rest is 50-100 feet. He said that he uses a cane when the pain is really bad and only lifts amounts that will not cause pain (Id.). The claimant testified he has a hard time walking without getting dizzy or falling. He said that his neck is stiff every day and causes reduced range of motion from side to side. The claimant testified he has lower back pain that radiates down his legs. He said he received a prescription for a cane in April 2024 because he was afraid of falling (Hearing Record).

(ECF No. 7, PageID #: 80).

### B. Relevant Medical Evidence

The ALJ also summarized Bollinger's health records and symptoms:

The claimant alleges he became disabled and unable to work as of November 13, 2022. He was 39 years old on that date. However, his first medical record in the file stems from an April 3, 2023 appointment which is nearly five months after his alleged onset date. At the April 3, 2023 visit, claimant's chief complaints included back pain on the right side, neck stiffness, and diffuse joint pain (3F/12). The claimant's physical exam noted he was alert and in no acute distress. Cervical range of motion was normal. He walked with a normal gait and displayed no deficits in terms of motor strength, sensation, or coordination (3F/15). Visit diagnoses included chronic joint pain and right-sided low back pain for which he was prescribed a muscle relaxer (3F/11).

Meanwhile, an MRI of the lumbar spine revealed a small posterior bulging disc containing an annular fissure which caused mild bilateral foraminal narrowing. However, there was no central spinal canal stenosis. In addition, the MRI found scoliosis of the lumbar spine with mild discogenic disease at the T12-L1, L3-L4, and L4-L5 levels (1F/14-15). After the imaging, claimant started receiving treatment at a pain clinic for lumbar spondylosis, lumbar radiculopathy, and chronic pain syndrome (2F/7). In August 2023, the claimant complained of occasional numbness/tingling and weakness in the bilateral legs. The physical exam noted claimant's gait was abnormal and while motor strength was normal in the left lower extremity, it was 4/5 for the right lower extremity (2F/1-2). At the conclusion of the visit, claimant received two medial branch block injections, was referred to pool physical therapy, and received prescriptions for Flexeril, Celebrex, and Duloxetine (2F/3).

Claimant followed up for chronic back pain in February 2024 where he rated his current pain level as a 9 out of 10. X-ray imaging of the cervical spine found mild disc space narrowing and early facet arthropathy at multiple levels. The assessment noted early cervical spondylosis but no acute fracture or traumatic misalignment (5F/18). The physical exam noted some tenderness to palpation of the paraspinal musculature as well as decreased lumbar extension range of motion (5F/15). Claimant's diagnoses included lumbar degenerative disc disease, lumbar spondylosis, cervical radiculopathy, and chronic pain syndrome. He was offered some lumbar medial branch blocks and ablations although claimant asserted he has a phobia of needles and wanted to hold off on any injections. In addition, claimant declined a referral for physical therapy and endorsed receiving adequate pain relief from his current medication regimen (5F/12).

Two months later on April 3, 2024, the claimant saw Judith Spieldenner, CNP, for chronic neck and back pain management. The physical exam indicated claimant walked with an abnormal gait and was unable to perform range of motion testing (13F/34-35). Later in April 2024, claimant had a case management referral where he stated that he needed a new cane (13F/27). But in July 2024, he complained of getting inadequate pain relief from his current medication regimen and was restarted on Flexeril (15F/60). Then at follow up on November 8, 2024, claimant indicated that while he felt that Celebrex had been helpful, he endorsed inadequate

pain relief on his current medication regimen (15F/17).

(ECF No. 7, PageID #: 81-82).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2027 (3D).

2. The claimant has not engaged in substantial gainful activity since November 13, 2022, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.)

3. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine (20 CFR 404.1520(c) and 416.920(c))

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except standing or walking limited to 4 out of 8 hours; never climbing ladders, ropes or scaffolds; occasional climbing of ramps or stairs; frequently balancing; occasional stooping, crouching, crawling, and kneeling; frequently reaching; occasional overhead reaching bilaterally; no exposure to extreme temperatures; no exposure to humidity and/or wetness; no exposure to dangers to life or limb in the workplace; no exposure to vibrating objects or surfaces in completing tasks; not required to work in high, exposed places.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

…

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 13, 2022, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(ECF No. 7, PageID #: 76, 78, 79, 84-86).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404,

Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

**C. Discussion**

Bollinger raises two issues on appeal. First, he argues that the ALJ "erred [when] evaluating the severity of Plaintiff's mental impairments and failed to account for these impairments in the RFC." (ECF No. 9 at 12-19). Next, Claimant argues that "[r]emand is warranted for the ALJ's errors in evaluating the opinion of Plaintiff's counselor." (ECF No. 9 at 19–23). The Court addresses each issue below.

**1. Assessment of Claimant's Impairment Severity and RFC**

Plaintiff argues the "ALJ erred at both step two and four" because he did not properly evaluate evidence when concluding Plaintiff's anxiety disorder and mood disorder were non-severe and failed to account for any limitations from these impairments in the RFC. (ECF No. 9 at 12). As to step two, Plaintiff argues the ALJ's analysis of his mental functioning "simply did not address most of the relevant evidence and failed to address evidence not lining up with his findings." (*Id.* at 15). Even if the ALJ did not err at step two, Plaintiff argues he failed to consider

the impairments in crafting the RFC because there were no mental limitations in the RFC and the ALJ "did not include any real discussion of mental limitations." (*Id.*at 17).

The Commissioner argues that the ALJ reasonably concluded that Plaintiff's mental impairments were not severe and this decision was supported by substantial evidence, including Plaintiff's statements in his function report and reports from providers. (ECF No. 12 at 5-9). Additionally, the Commissioner argues the ALJ "was not required to accommodate Plaintiff's mild 'paragraph B' criteria findings in the RFC" and his acknowledgment of the requirement that he consider all impairments in crafting the RFC, statement that RFC reflected the degree of limitation he found in the mental function analysis, and note that he considered all symptoms is sufficient to establish that he complied with the regulations in light of *Napier v. Commissioner of Social Security*, 127 F.4th 1000, 1006 (6th Cir. 2025). (*Id.* at 9). Finally, the Commissioner argues that any error in failing to consider Plaintiff's mild "paragraph B" findings in the RFC was harmless because the ALJ gave the vocational expert a hypothetical question that included additional mental limitations and "[e]ven with those restrictive mental limitations, the vocational expert testified that Plaintiff could work as a marker, garment sorter, and checker," the same jobs relied on by the ALJ in concluding Plaintiff could perform other work. (*Id.* at 11).

At step two, an ALJ considers the severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is not considered severe if it does not "significantly limit [one's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). The Sixth Circuit "construes step two as a *de minimis* hurdle, intended to 'screen out totally groundless claims.'" *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 597 (6th Cir. 2018) (citation omitted). When an ALJ determines that one or more of a claimant's impairments are severe, the ALJ must proceed to consider the "limitations and restrictions imposed by *all* of an individual's impairments,

even those that are not severe." *Id.* (citation modified). Typically, "any perceived failure to find additional severe impairments at step two [does] not constitute reversible error" as long as the ALJ considered all of the claimant's impairments in the remaining steps. *Id.* (citation modified).

At step four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). The ALJ must "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5. Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7. Thus, "[i]n rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (citations omitted). A court "cannot uphold an ALJ's decision, even if there is 'enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Id.* at 877.

Here, the undersigned agrees with the Commissioner that the ALJ did not err in finding Plaintiff's mental impairments were not severe. The ALJ analyzed each of the areas of mental functioning, concluding that Plaintiff had no more than mild limitations based on Plaintiff's own reports, findings of the consultive examiner, and the record evidence. (ECF No. 7, PageID #: 76-78). Substantial evidence supports the ALJ's conclusion. (*See id.* at PageID #: 340-47) (function report linking any problems with self-care to pain rather than mental limitations and indicating ability to shop, manage money, spend time with others despite not liking people, and follow written directions); 471-76 (consultive examination report finding no cognitive issues based on testing

conducted during the examination). While Plaintiff cites additional evidence that could support an alternate conclusion, because substantial evidence supports the ALJ's decision, the Court must defer to it "even if there is substantial evidence that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). Further, even if the ALJ erred at step two, any error is harmless because the ALJ concluded Plaintiff had at least one severe impairment and proceeded through the sequential evaluation. *Kestel*, 756 F. App'x at 597.

The undersigned also agrees that the ALJ did not fail to consider Plaintiff's mental impairments at step four. The Sixth Circuit has previously held that an "ALJ's express reference to SSR 96-8p, along with her discussion of the functional limitations imposed by [the claimant's] nonsevere impairments at step two of her analysis" support that the ALJ complied with the requirement that he consider all impairments in crafting the RFC. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020). Here, in setting forth the relevant law, the ALJ recognized the requirement that he "consider all the claimant's impairments, including impairments that are not severe" and cited SSR 96-8p. (ECF No. 7, PageID #: 75). As discussed above, the ALJ concluded at step two that Plaintiff did not have any significant limitations from his mental impairments such that they were not severe but indicated that he "considered all of the claimant's medically determinable impairments, including those that were not severe, when assessing the claimant's residual functional capacity." (*Id.* at PageID #: 76). Further, the ALJ specifically observed that Plaintiff's mental impairments did not cause more than minimal limitations in his work abilities. (*Id.*). Thus, the ALJ concluded that even considering Plaintiff's mental impairments, additional limitations in the RFC were not warranted. The ALJ was not required to provide any further discussion or explanation regarding his consideration of Plaintiff's mental impairments.

Finally, as the Commissioner argues, any error in considering Plaintiff's mental impairments when crafting the RFC was harmless. When posing a hypothetical to the vocational expert, the ALJ included limitations to only occasional changes in work setting, no public interaction, occasional interaction with supervisors and coworkers, no complex decision-making, no specific production rate-paced work, and brief and superficial interaction with others. (ECF No. 7, PageID #: 112). The vocational expert testified that other jobs would exist in significant numbers that Plaintiff could perform and the ALJ relied on these same jobs in concluding Plaintiff was not disabled. (*Id.* at PageID #: 85, 112-14). Thus, even had the ALJ included these additional limitations, the result of the proceedings would not have been different and as such any error was harmless.

**2. Evaluation of Plaintiff's Counselor's Opinion**

Plaintiff next challenges the ALJ's consideration of the medical opinion of his counselor, Lindsey Whittemore. Under the current regulations, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 416.920c(a). Nevertheless, an ALJ must "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. *Id.* Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 416.920c(c). The factors include supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. § 416.920c(c). The ALJ is required to explain how he considered the supportability and consistency of a source's medical opinion but generally is not required to discuss other factors. 20 C.F.R. § 416.920c(b)(2). Under the regulations, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source

are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be" and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical findings(s) will be." 20 C.F.R. § 416.920c(c)(1)-(2).

The ALJ provided the following explanation regarding his consideration of Whittemore's opinion:

> Lindsey Whittemore, MSW, LICSW, wrote a letter indicating that claimant's disabilities prevent him from holding employment. That the claimant's disabilities affect him daily and his prognosis is chronic and lifelong (7F/1 and 9F/1). The letter supporting disability was based on psychological conditions including post-traumatic stress disorder, bipolar I disorder, social phobia disorder, and generalized anxiety disorder. I do not find this letter persuasive because it is not supported with specific citations to the record to explain a basis for the conclusions reached. The opinion also is not consistent with objective medical evidence of record that includes the mental status exams, course of treatment, or activities of daily living. Had claimant been as limited as opined here, one would look to see more aggressive mental health treatment.

(ECF No. 7, PageID #: 84).

Plaintiff argues the ALJ "erred by failing to properly articulate the supportability and consistency factors" when considering the opinion. (ECF No. 9 at 19). Plaintiff asserts that while the ALJ found the opinion unsupported by the record, he "constantly had abnormal examination findings with reduced judgment and lacking recent memory at follow-ups." (*Id.* at 21). Additionally, Plaintiff argues the ALJ failed to compare Whittemore's opinion with other consistent evidence in the record. (*Id.* at 22-23).

The Commissioner responds that substantial evidence supports the ALJ's decision to find Whittemore's opinion unpersuasive. (ECF No. 12 at 11-12). The Commissioner argues that the ALJ's conclusion that the opinion was not supported with specific citations explaining a basis for

the conclusions "was both an accurate statement, and a valid basis to discount [the] opinion." (*Id.* at 12 (internal citations omitted)). Additionally, the Commissioner argues the ALJ's consistency analysis is supported by the record and Plaintiff's reliance on evidence that he believes supports Whittemore's opinion is "asking the Court to reweigh the evidence and replace the ALJ's conclusion with its own." (*Id.* at 13).

The undersigned agrees with the Commissioner that the ALJ properly articulated his consideration of the supportability and consistency factors in finding Whittemore's opinion unpersuasive. As to supportability, the ALJ accurately observed that Whittemore's one-page letter was "not supported with specific citations to the record to explain a basis for the conclusions reached." (ECF No. 7, PageID #: 84; *see id.* at PageID #530). Regarding consistency, the ALJ observed that Whittemore's restrictive opinion was "not consistent with objective medical evidence of record that includes the mental status exams, course of treatment, or activities of daily living." (*Id.* at PageID #: 84). Throughout his decision, the ALJ highlighted that despite Plaintiff's complaints of disabling mental impairments, he reported not needing reminders to care for himself or take medications; being able to shop, garden, count change and handle money, and understand written instructions; never being terminated or laid off due to problems getting along with others; and working as a Door Dash driver after the alleged onset date. (*Id.* at PageID #: 76-78; *see id.* at PageID #: 95, 340-47). Thus, substantial evidence supports the ALJ's decision and while additional evidence may exist to support an alternative conclusion, the Court must defer to the ALJ's decision. *Wright*, 321 F.3d at 614.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Bollinger's

Statement of Errors and AFFIRM the Commissioner's decision.

Dated: September 30, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).